# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:20-cr-95 (VAB) |
| WILLIAM ROSARIO LOPEZ. | |

## RULING AND ORDER ON OMNIBUS MOTIONS

William Rosario Lopez ("Defendant") has been charged in a ten-count Second Superseding Indictment alleging that he engaged in obstruction of interstate commerce by robbery in violation of 18 U.S.C. § 1951(a), possession, brandishing and discharge of a firearm during and in relation to a crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (iii), and unlawful possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(2). *See* Second Superseding Indictment, ECF No. 271 (March 18, 2025) ("Second Superseding Indictment").

In advance of trial, Mr. Lopez and the United States of America (the "Government") have filed various motions to admit, exclude, or limit certain types of evidence. *See* Mot. to Suppress, ECF No. 58 (Oct. 9, 2020); Mem. in Supp. of Mot. to Suppress, ECF No. 58-1 ("Mot. to Suppress"); Mot. *in Limine* re Bad Act Evidence, ECF No. 66 (Oct. 9, 2020); Mem. in Support re Mot. *in Limine* re Bad Act Evidence, ECF No. 66-1 ("Mot. *in Limine*"); Mot. re Grand Jury Minutes, ECF No. 125 (Sept. 13, 2021); Mem. in Supp. re Mot. re Grand Jury Minutes and/or Transcripts, ECF No. 125-1 ("Mot. re Grand Jury Minutes"); Mot. to Compel Physical Examination and Photographing, ECF No. 136 (Oct. 4, 2021) ("Mot. re Photographing").

Mr. Lopez has also filed a motion to sever the last count[1] of the Indictment, charging him with unlawful possession of a firearm by a felon. Mot. to Sever Count 11, ECF No. 63 (Oct. 9, 2020); Mem. In Support re Mot. to Sever Count 11, ECF No. 63-1 ("Mot. to Sever").

For the following reasons, Mr. Lopez's motion to suppress, ECF No. 58, is **DENIED** without prejudice to renewal at trial.

Mr. Lopez's motion to inspect grand jury minutes and transcriptions, ECF No. 125, is **DENIED**.

Mr. Lopez's motion *in limine* to exclude "bad act" evidence, ECF No. 66, is **DENIED** without prejudice to renewal at trial.

The Government's motion for physical examination and photographing, ECF No. 136, is **GRANTED** in part and **DENIED** in part. The Government may photograph Mr. Lopez's wrists, forearms, and stomach area, but it may not compel Mr. Lopez to provide photographs of his chest area.

Mr. Lopez's motion to sever or bifurcate the Section 922(g) charge, ECF No. 63, is **GRANTED** in part and **DENIED** in part. The request to sever the 922(g)(1) Count is denied, but the Court will bifurcate the Count from Counts One to Nine of the Second Superseding Indictment.

---

[1] After Mr. Lopez filed his motion to sever Count Eleven, a grand jury returned a superseding indictment, Superseding Indictment, ECF No. 105 (June 7, 2021) ("Superseding Indictment"), and a Second Superseding Indictment, which is the operative indictment in this case. *See* Second Superseding Indictment. Count Ten of the Second Superseding Indictment includes the same charge as Count Eleven of the original indictment, *see* Indictment, ECF No. 30 (Jun. 17, 2020), and is based on the same underlying alleged conduct.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes familiarity with the factual and procedural history of the case and includes only events relevant to the pre-trial motions at issue here. *See* Ruling and Order on Mot. for Joinder, ECF No. 228 (Sept. 3, 2024).

## A.    Factual Background

On April 9, 2020, FBI investigators detained Mr. Lopez and Solimar Rodriguez Gonzalez ("Ms. Gonzalez") outside of 1523 Church Street in New Haven, Connecticut. Mot. to Suppress at 1; Objection, ECF No. 132 (Sept. 30, 2021) ("Opp'n re Suppress/Inspection") at 3. During his arrest, Mr. Lopez responded to officers' questions in English, and requested a jacket in English. Gov. Mem Ex. A at 0:45-50, 1:00-2:30, 2:45-2:54; *see also* Opp'n re Suppress/Inspection at 4. Mr. Lopez then asked to speak with a Spanish-speaking officer, asked for a jacket in Spanish, and explained to the officer, in Spanish, that he and Ms. Gonzalez speak Spanish. Gov. Mem. Ex. A at 2:55-3:15, 3:50-4:00; *see also* Opp'n re Suppress/Inspection at 5.

Mr. Lopez was then transported to the FBI New Haven Field Office, where he "was not free to leave." Opp'n re Suppress/Inspection at 6. FBI officers then interviewed Mr. Lopez in English. *Id.*; Mot. to Suppress at 1; Gov. Mem. Ex. B. Mr. Lopez responded to questions such as his last name in English, and officers then read Mr. Lopez his Miranda rights in English and asked him to sign an acknowledgment that he understood these rights. Gov. Mem. Ex. B at 4:14-4:35, 5:00-5:25; Opp'n re Suppress/Inspection at 6–7.

Mr. Lopez signed the document, although he allegedly "did not understand each word" of the document, or "the very basic and important rights that are contained in [the] document or that [he] was waiving those very important rights." Affidavit, ECF No. 123 (Sept. 9, 2021) ("Lopez Affidavit") at ¶ 11. Mr. Lopez allegedly did not request a Spanish interpreter or indicate that he

did not understand his Miranda rights. Opp'n re Suppress/Inspection at 7. FBI officers then questioned Mr. Lopez about the robberies. *Id.* at 7–8. Mr. Lopez identified Ms. Gonzalez in one photograph from video surveillance of the robberies, Gov. Mem. Ex. B at 12:25-12:34 (Q: Do you recognize who that is? A: Of course Q: Who is that? A: It's Solimar), but denied that he was depicted in the photographs, Opp'n re Suppress/Inspection at 8, and told FBI officials "You don't have a gun." Gov. Mem. Ex. B at 17:32-17:33. About sixteen minutes into the interview, Mr. Lopez requested a lawyer, and the interview ended. *Id.* at 19:32-19:34.

### B. Procedural History

On September 9, 2020, Mr. Lopez filed a motion to suppress his post-arrest statements, Mot. to Suppress, and a motion *in limine* to exclude evidence of (1) crimes for which he has been charged, (2) crimes for which he has been convicted, and (3) evidence of "bad acts" or uncharged crimes attributed to Mr. Lopez. Mot. to Suppress; Mot. *in Limine*.

On that same date, he also filed a motion to sever the final count of the Indictment, which charged him with unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(l) and 924(a)(2) (the "Section 922(g)(1) Count"), or in the alternative, to bifurcate the Section 922(g)(1) Count from the remaining charges. Mot. to Sever.

On October 16, 2020, the Government filed an opposition to Mr. Lopez's motion to sever, but indicated it consented to bifurcation of the Section 922(g)(1) Count. Mem. in Opposition, ECF No. 70 (Oct. 16, 2020) ("Opp'n re Sever").

On September 9, 2021, Mr. Lopez filed an affidavit in support of his motion to suppress. Affidavit, ECF No. 123 (Sept. 9, 2021) ("Lopez Affidavit").

On September 13, 2021, Mr. Lopez filed a motion for an order permitting the defense to inspect the grand jury minutes and transcripts forming the basis of his indictment. Mot. re. Grand Jury Minutes.

On September 30, 2021, the Government filed an objection to Mr. Lopez's motion to suppress and his motion for an order to allow the inspection of grand jury minutes/transcripts. Opp'n re Suppress/Inspection.

On October 4, 2021, the Government filed a motion to compel physical examination and photographing of Mr. Lopez. Mot. re Photographing.

On October 7, 2021, Mr. Lopez filed a response consenting to photographing of Mr. Lopez's, wrists, arms, and stomach, but objecting to photographs of Mr. Lopez's chest area. Response to Mot. to Compel, ECF No. 139 (Oct. 7, 2021) ("Resp. to Mot. re Photographing").

On August 30, 2024, the parties filed their joint trial memorandum. Joint Trial Memorandum, ECF No. 226 (Aug. 30, 2024) ("Joint Trial Memo").

## II.      STANDARD OF REVIEW

### A.  Motion to Suppress

When an individual is questioned in police custody, "[h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "Statements made during a custodial interrogation are generally inadmissible unless a suspect has first been advised of his or her rights." *United States v. Faux*, 828 F.3d 130, 134 (2d Cir. 2016).

Before trial, a criminal defendant may move to suppress evidence that was obtained

illegally, including statements elicited in violation of *Miranda*. *See* Fed. R. Crim. P. 12(b)(3)(C). On a motion to suppress, the government bears the burden of proving by a preponderance of the evidence that the defendant's statement is admissible. *See Missouri v. Seibert*, 542 U.S. 600, 609 n.1 (2004) (plurality opinion).

### B.  Motion *in Limine*

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig*., 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

### C.  Motion to Sever

Under Federal Rule of Criminal Procedure 8, offenses may be joined if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Joinder is proper where the same evidence may be used to prove each count, or if the counts have a sufficient logical

connection." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citations omitted).

"Even if offenses are properly joined," however, "in certain circumstances severance may be warranted." *Id.* Under Federal Rule of Criminal Procedure 14, where proper joinder under Rule 8 "appears to prejudice a defendant or the government, the court may order separate trials of counts" or "provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Page*, 657 F.3d at 129 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The Supreme Court has made clear that the burden for severance is high, as a district court should sever "only if there is serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The "defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). And under Rule 14, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 538.

## III.    DISCUSSION

Mr. Lopez has four pending pre-trial motions seeking to (1) suppress his post-arrest statements, (2) inspect the minutes and/or transcripts of the grand jury hearing forming the basis of his indictment, (3) exclude evidence of his prior convictions, arrests, or bad acts, and (4) to sever, or in the alternative, bifurcate, the Section 922(g)(1) Count.

The Government has filed a motion to compel physical examination and photographing of Mr. Lopez.

The Court will address each motion in turn.

## A. The Motion to Suppress Post-Arrest Statements[2]

Under the Fifth Amendment's right against self-incrimination, criminal defendants are entitled to warnings about their right not to incriminate themselves. *Miranda*, 384 U.S. at 467–74. "An interaction between law enforcement officials and an individual generally triggers *Miranda*'s prophylactic warnings" when it "becomes a 'custodial interrogation.'" *United States v. FNU LNU*, 653 F.3d 144, 148 (2d Cir. 2011). Defendants subject to custodial interrogation can waive their *Miranda* rights "provided [that] the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. A waiver is voluntary if "it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception" and if the defendant had "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *see also Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010) ("The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel.").

"It is the Government's burden to demonstrate that a waiver was knowing and voluntary." *Hernandez v. McIntosh*, No. 22-CV-2266 (CM) (RWL), 2023 WL 6566817, at *16 (S.D.N.Y. Oct. 10, 2023) (citing *Berghius v. Thompkins*, 560 U.S. 370, 383-84 (2010)). "The

---

[2] "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005) (internal quotation marks omitted). A hearing is unnecessary, however, when the defendant's moving papers "did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969); *see also Watson*, 404 F.3d at 167 (holding that an evidentiary hearing was not required when the defendant "failed to show that he could challenge the search under the Fourth Amendment, even assuming we credited the facts asserted in his counsel's affirmation"). For the reasons discussed herein, Mr. Lopez's motion does not establish the need for an evidentiary hearing because he has not demonstrated "contested issues of fact" related to the voluntariness of Mr. Lopez's confession. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on a motion to suppress is needed when the court "conclude[s] that contested issues of fact going to the validity of the search are in question.").

question of waiver must be determined on the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011) (quoting *United States v. Spencer*, 995 F.2d 10, 11 (2d Cir. 1983) (per curiam)).

"With respect to the characteristics of the accused, it is well-settled in the Second Circuit that the existence of limitations on English language skills does not preclude a defendant from knowingly and voluntarily waiving his or her *Miranda* rights." *United States v. Jabu*, No. 12-CR-454 KAM, 2012 WL 5389937, at *5 (E.D.N.Y. Nov. 5, 2012) (collecting cases and citing *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) ("[T]he defendants were found to have a reasonably good command of the English language. Thus, the district court properly concluded that Rouhani's waiver was knowingly and voluntarily given."); *and Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) (finding voluntary waiver despite defendant's "poor grasp of English and the confusing circumstances surrounding the questioning" because "although he spoke in broken English with an accent and occasionally lapsed into Spanish, his command of English was sufficient for him to have understood the Miranda warnings given to him[,]" "he was alert and observant during the times that the warnings were given" and "[o]n each occasion that he was advised of his rights, he indicated that he understood those rights")). "A language barrier may prevent a defendant from making a knowing and intelligent waiver, but fluency in English is not a prerequisite to waiving *Miranda* rights in English." *United States v. De La Cruz*, No. 3:19-CR-00048 (KAD), 2022 WL 88168, at *9 (D. Conn. Jan. 7, 2022) (collecting cases); *see also United States v. Koshkin*, No. 3:19-CR-00251 (MPS), 2021 WL 268885, at *10 (D. Conn. Jan. 27, 2021) ("[L]imited English-language ability can suffice to make a knowing and voluntary waiver.").

Mr. Lopez argues that he did not voluntarily waive his *Miranda* rights because "1) the Miranda waiver is not in his native language, i.e. Spanish, but rather in English; 2) [he] has, at best, a minimal understanding of the English language and he requires the services of a Spanish-to- English interpreter to understand even simple concepts; 3) the alleged Miranda warning occurred within a period of thirty seconds or less; 4) there is no indication that [he] understood what was going on when the alleged waiver was given, let alone that he was waiving his constitutional rights and what this truly entailed or meant; and 5) [his] psychological state also interfered with his ability to understand and comprehend what was going on and whether he knowingly made any relinquishment of his constitutional rights." Mot. to Suppress at 1–2. Mr. Lopez does not offer further explanation regarding the limitations related to his "psychological state," in his affidavit, although he claims that his "understanding of English is very limited" and "[w]ithout the assistance of other's translation services, . . . [he] would be unable to accurately, correctly or knowingly interact with a third person in the English language." Lopez Affidavit ¶ 5, 7.

In response, the Government asserts that "[t]he totality of circumstances show that [Mr.] Lopez knowingly and voluntarily waived his rights" because (1) Mr. Lopez is familiar with his *Miranda* rights because of his prior arrests, and (2) Mr. Lopez's interactions with law enforcement in this incident and earlier in 2020 demonstrate that he had a "reasonably good command" of the English language, and (3) Mr. Lopez's request for an attorney approximately sixteen minutes into his interview demonstrates that he understood his rights.

Based on the present record, the Court agrees, at least in part, although it will not resolve this issue definitively unless the Government chooses to rely on this evidence at trial. If so, Mr. Lopez may renew his motion to suppress his post-arrest statements.

The parties do not dispute that Mr. Lopez's interview at the FBI Office was a custodial interrogation. The central question, then, is whether Mr. Lopez, who is not fluent in the English language, knowingly and voluntarily waived his *Miranda* rights when such rights were read to him in English and he signed a waiver printed in English.[3]

Before he was taken to the FBI office, Mr. Lopez requested to speak with a Spanish-speaking officer and stated, in Spanish, that he and Ms. Rodriguez speak Spanish. While Mr. Lopez did not request an interpreter at the FBI office, the Court has serious concerns about the propriety of the FBI office's interrogation in English and failure to provide a Spanish language *Miranda* form given that FBI officers were on notice that Mr. Lopez's primary language was in Spanish. While certainly, "a lack of fluency in English does not automatically preclude a defendant from executing a knowing and voluntary waiver of rights in that language," *United States v. Ocasio*, 80 F. App'x 127, 129 (2d Cir. 2003) (summary order), after officers were on notice that Mr. Lopez's primary language was Spanish, they could have provided a Spanish-language version of an advice of rights form to ensure that his waiver of such rights was knowing and voluntary. *See Koshkin*, 2021 WL 268885, at *10 (finding voluntary waiver where defendant "was provided his rights in a language he could understand, the [FBI] advice of rights form in Russian").

In addition, an arrest nearly fourteen years earlier, where Mr. Lopez had been read his *Miranda* rights, is hardly "reliable and clear-cut" evidence that he understood his serious and

---

[3] As discussed above, while Mr. Lopez refers to his "psychological state" in his motion to suppress, he does not provide further evidence or argument related to his psychological state, whether in his affidavit or in a reply to the Government's memorandum in opposition to his motion to suppress. Although Mr. Lopez told agents that he sees a therapist during his interview, *see* Gov. Mem. Ex. B at 9:30–10:50, there is no evidence that Mr. Lopez's psychological state was compromised at the time of his custodial interview such that he "was so incompetent that he was not aware both of the nature of [his *Miranda* rights] being abandoned and the consequences of the decision to abandon it." *United States v. Male Juvenile*, 121 F.3d 34, 40 (2d Cir. 1997); *see also Toste v. Lopes*, 861 F.2d 782, 783 (2d Cir. 1988), *cert. denied*, 490 U.S. 1112 (1989) ("A waiver of the right to remain silent is not invalid merely because a defendant is of limited mental capacity.").

important rights. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972) ("[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered."). As a result, the Government may not rely on previous "interaction[s] with the criminal justice system" from over a decade before the events here to meet its burden to show that "Lopez was familiar with his rights" and made a knowing and voluntary waiver. Opp'n re Suppress/Inspection at 13–14.

As to Mr. Lopez having had a "reasonably good command" of the English language, however, Mr. Lopez's ability to respond to officers' questions appropriately and with more than "yes" or "no" answers suggests that he may have had sufficient command of the English language to understand his waiver of rights,[4] despite the serious concerns noted above. For example, before the agents informed Mr. Lopez of his *Miranda* rights, he responded to the agent's questions in English with more than rudimentary "yes" or "no" answers. *See, e.g.*, Gov. Mem. Ex. B at 4:15–4:33 (Q: So what's your last name you go by Rosario Lopez, or what do you go by? A: Rosario – In Puerto Rico they include two last names, the Rosario is from my father, Lopez is from my mother). In addition, in response to the agent's questions about how long he had known Ms. Gonzalez, although he struggled with pronouncing certain words such as "psychologist" and showed discomfort with speaking in English, Mr. Lopez discussed how he was seeing a therapist because it was difficult for him to remember events and concentrate due to a traumatic event in his childhood. *Id.* at 9:30–10:50. In response to questions about whether he

---

[4] In addition, in June 2023, Mr. Lopez filed a nine-page *pro se* motion handwritten in English, which suggests that he has sufficient proficiency with the English language. *See* Motion, ECF No. 180 (Jun. 26, 2023). Although this filing, more than three years removed from his arrest and the statements at issue here, is less probative of his ability to understand English at the time of his arrest, the Government also submitted a video Mr. Lopez's interaction with the New Haven police on March 14, 2020, where he can be observed responding to an officer's questions in English. Gov. Mem. Ex. C at 0:35–0:50, 1:12–3:23, 13:00–14:30, 19:10–20:43.

had ever been in Waterbury, Mr. Lopez informed agents that "sometimes I am in a place and not sure what place is it . . . cause I live in my car sometimes." *Id.* at 14:00–14:21; *see also id.* at 14:21–14:40 (Q: Are you living in your car now? A: [inaudible] Yes, yesterday was one I only was in the house. I live in my car because I have problems that I told you – I got some problems so sometimes live in my car). After the agents suggested they had evidence linking him to the alleged crimes, he exercised his right to request a lawyer. *Id.* at 19:32–19:34. As agents collected his DNA sample, Mr. Lopez continued to engage with the agents in English, and, unprompted, informed agents that he "had a problem with [his] gut and [his] stomach" and he "needed surgery to fix it." *Id.* at 22:14–22:34.

As a result, considering the totality of the circumstances, there may be sufficient evidence that Mr. Lopez had a sufficient command of English such that his waiver of his *Miranda* rights was knowing and voluntary. *See De La Cruz*, 2022 WL 88168, at *10–11 (defendant had sufficient command of English language to make knowing and voluntary waiver where "special agents managed to have fairly detailed conversations with the Defendant" in English, and " the Defendant repeatedly represented that he understood [court] proceedings that were occurring in English"); *see also Jaswal*, 47 F.3d at 542 (finding knowing and voluntary waiver where "the defendants were found to have a reasonably good command of the English language"); *Campaneria*, 891 F.2d at 1020 (finding knowing and voluntary waiver because "although [the defendant] spoke in broken English with an accent and occasionally lapsed into Spanish, his command of English was sufficient for him to have understood the *Miranda* warnings given to him").

Accordingly, the Court will deny Mr. Lopez's motion to suppress without prejudice to renewal should the Government choose to rely on this evidence at trial.

### B.  The Motion to Inspect Grand Jury Minutes/Transcripts

"The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "Grand jury proceedings[, however,] are presumptively secret, and a defendant seeking the disclosure of grand jury materials bears a heavy burden." *United States v. Schlegal*, 687 F. App'x 26, 30 (2d Cir. 2017) (summary order) (citing *In re Petition of Craig*, 131 F.3d 99, 104 (2d Cir. 1997)). This is because "a presumption of regularity attaches to grand jury proceedings." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). "[T]he grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge . . . and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. *United States v. Williams*, 504 U.S. 36, 51 (1992) (internal citations omitted).

As a result, Rule 6(e)(3)(E)(ii) requires a defendant to make a "showing of particularized need" to justify the disclosure. *See United States v. Sobotka*, 623 F.2d 764, 768 (2d Cir. 1980); *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) ("Grand jury proceedings are traditionally conducted in secret . . . [and] the burden is on the party seeking disclosure to show [that the] 'particularized need' . . . outweighs the need for secrecy."). "A party makes a showing of particularized need by proving [1] 'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, [2] that the need for disclosure is greater than the need for continued secrecy, and [3] that their request is structured to cover only material so needed.'" *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

Mr. Lopez requests to obtain and review the grand jury minutes and transcriptions forming the basis for his Indictment and argues that he "may have grounds to seek a dismissal of the indictment . . . if the government used hearsay information in the guise of firsthand testimony to obtain the indictment and/or that there is a high probability that the defendant would not have been indicted without the hearsay testimony." Mot. re Grand Jury Minutes at 1–2 (citing *United States v. Ruggiero*, 934 F.2d 440 (2d Cir. 1991)).

In response, the Government argues that Mr. Lopez "cannot and does not allege government misconduct, does not set forth any factual allegation that the grand jury proceedings were tainted, but seeks release so that he can determine whether irregularities occurred." Opp'n re Suppress/Inspection at 19. The Government further states that "[w]here required by 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2, the Government will timely provide the defendant with transcripts of grand jury testimony as *Jencks* material before any evidentiary hearings, or should the defendant elect to proceed to trial." *Id.*

The Court agrees.

Rather than identifying a discrete portion of testimony that is likely to have improperly relied on hearsay, Mr. Lopez requests to review the entirety of the grand jury minutes to determine whether misconduct occurred. Grand jury proceedings, however, "carry a 'presumption of regularity[,]'" and "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 232 (2d Cir. 1990) (collecting cases), *abrogated on other grounds as recognized by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). Mr. Lopez does not provide any specificity regarding his allegations of potential misuse of hearsay testimony, let alone a basis to believe that the prosecution failed to properly instruct the grand jury on hearsay testimony. *See Ruggiero*, 934

F.2d at 447 ("It is entirely permissible for the government to use hearsay evidence in its presentation to the grand jury. However, the use of hearsay evidence before a grand jury may render an indictment invalid if (1) the government misleads the grand jury into thinking it is receiving firsthand testimony when it is in fact receiving hearsay or (2) if there is a high probability that the defendant would not have been indicted had only nonhearsay evidence been used." (citation omitted)). "Mere speculation that . . . the Government may have improperly instructed the grand jury . . . falls far short of the showing to overcome the presumption of secrecy." *United States v. Forde*, 740 F. Supp. 2d 406, 414 (S.D.N.Y. 2010) (citations omitted).

Mr. Lopez thus fails to meet his "heavy burden" in overcoming this presumption of secrecy of because he fails to provide a particularized basis for inspecting grand jury minutes and transcriptions. *See United States v. Kufrovich*, 997 F. Supp. 246, 253 (D. Conn. 1997) (rejecting a request to disclose grand jury minutes of the instructions where the defendant merely stated it was "extremely likely" that the Government gave improper instructions because "[t]his speculative assertion does not rise to the level required to overcome the presumption of regularity in grand jury proceedings, including the presumption that the government properly instructed the grand jury on the elements of the charged offenses").

Accordingly, Mr. Lopez's motion to inspect grand jury minutes and transcriptions, ECF No. 125, will be denied.

### C.  The Motion *in Limine* re Rule 404(b) Evidence

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence of a "crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), however, so long as it is "relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal quotations and citations omitted). The Second Circuit follows the inclusionary rule for other act evidence under Rule 404(b), "which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (quotation marks omitted). This rule, however, "is not a carte blanche to admit prejudicial extrinsic act evidence [that] is offered to prove propensity, . . . or otherwise to allow propensity evidence in sheep's clothing." *Id.* (alteration in original) (citations and quotation marks omitted).

At all times, however, such evidence is subject to the balancing test of Rule 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403; *see also Lewis v. Velez*, 149 F.R.D. 474, 483 (S.D.N.Y. 1993) ("Convictions for crimes or other bad acts that bear a close resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts."). "A trial court has 'broad discretion' in decisions relating to extrinsic acts." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir.1990)).

Additionally, under Rule 404(b)(3), in a criminal case, the Government must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

17

> (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

"In 2020, Rule 404(b)'s notice requirement was amended to require the Government to articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose. The Committee stated that the amendment was intended to require the Government to provide not only the general nature of the evidence but also to describe the specific act that the evidence would tend to prove, and explain the relevance of the evidence for a non-propensity purpose." *United States v. Patel*, No. 3:21-CR-220 (VAB), 2023 WL 2643815, at *26 (D. Conn. Mar. 27, 2023) (internal citations and quotation marks omitted) (citing Fed. R. Evid. 404 Committee Notes (2020 Amend.)).

Mr. Lopez has filed a motion *in limine* to preclude evidence related to "(a) any crimes with which the defendant has been charged elsewhere; (b) crimes for which the defendant has been convicted; as well as (c) evidence of any 'bad acts' or uncharged crimes attributed to the defendant." Mot. *in Limine* at 1.

While the Government has not notified its intent to introduce evidence of crimes of "any crimes with which [Mr. Lopez] has been charged elsewhere," the Government seeks to introduce evidence of prior actions and his convictions. Joint Trial Memo at 10–11, 13–15.

The Court will address each issue in turn.

### 1. Evidence of Prior Alleged Acts

The Government intends to introduce evidence of two alleged incidents that it argues are relevant "[t]o establish the defendant's identity and the investigative steps that led to the arrests of [Mr. Lopez] and Solimar Rodriguez Gonzalez[.]" Joint Trial Memo at 13. On April 1, 2020, Mr. Lopez and Ms. Gonzalez allegedly were investigated for a shoplifting incident at a Walmart

in Guilford, CT. *Id.* at 13. Allegedly, a Milford police officer, Officer Kevin Hilliard, observed that the vehicle and individuals involved in the shoplifting resembled the suspects and vehicle involved in the gas station robberies charged in this case. *Id.* Officer Hilliard allegedly observed a license plate for the vehicle, and found another incident associated with the vehicle on March 14, 2020. *Id.* at 14. Allegedly, on that date, police were called to a pet store in New Haven, CT because Mr. Lopez and Ms. Gonzalez were in a dispute with employees at a pet store. *Id.*

The Government argues that this evidence is "not offered to show propensity; rather, it would be offered for proper purposes such as proof of identity and the investigation that led to the charges" and that "these incidents are intrinsic to the investigation of the charged offenses as they, along with other evidence, led to the identification and arrests of the defendant and Gonzalez for the robberies." *Id.* The Government further contends that "to eliminate any arguably irrelevant or unduly prejudicial evidence, the government does not intend to refer to the larceny; rather, it would call Ofc. Hilliard to explain how the Guilford images came to him and how he made the connection, without reference to other crimes." *Id.*

The Court agrees that this evidence is admissible, at least in part.

"[A] district court may not freely admit evidence of conduct simply because it relates to the charged crimes or the government offers it for a purpose other than to demonstrate the defendant's propensity to commit the alleged conduct." *Zhong*, 26 F.4th at 551. "Even when [this Circuit's] precedents would otherwise allow the district court to admit evidence of uncharged criminal conduct 'to complete the story of the crime on trial' or to demonstrate some fact in issue 'other than . . . a defendant's criminal propensity,' a district court may admit that evidence only if it 'satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence.'" *Id.* (quoting *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011)).

Here, the prior acts that the Government intends to offer allegedly show Mr. Lopez with the vehicle allegedly used in the charged offenses and with Ms. Gonzalez, who allegedly was present at the robberies. As a result, this evidence is relevant to establishing Mr. Lopez's identity as the individual allegedly observed at the gas station robberies charged here, and thus has a relevant non-propensity purpose. *See* Fed. R. Evid. 404(b)(2) (evidence of other acts "may be admissible for another purpose, such as proving . . ., identity"). In addition, this evidence, which provides the background for the investigation into Mr. Lopez that led to the charges here, arguably is "necessary to complete the story of the crime on trial." *See United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (citation omitted); *see also United States v. Esposito*, No. 20-2143-CR, 2021 WL 5492935, at *2 (2d Cir. Nov. 23, 2021) ("[E]vidence of a defendant's uncharged prior criminal conduct is admissible without reference to Rule 404(b) if that conduct 'arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" (quoting *Robinson*, 702 F.3d at 37)).

Further, while the Court certainly may nonetheless exclude this evidence should it find that its relevance is substantially outweighed by the risk of unfair prejudice, *see* Fed. R. Evid. 403, the Government has indicated that it will not offer testimony regarding the alleged "larceny" or "reference to other crimes," in order to mitigate the risk of unfair prejudice.[5] Joint Trial Memo at 14. As a result, given the information the parties have provided at this time, the Court will allow the Government to present this evidence, although the Defendant may renew his

---

[5] The Court also notes that certain portions of the video depicting the incident involving the pet store in New Haven, which is included as Exhibit C to the Government's opposition to Mr. Lopez's motion to suppress, shows Mr. Lopez agitated and shouting at the store's employees and thus runs the risk of unfair prejudice and confusing the jury. As a result, should the Government seek to introduce substantial portions of this video, the Court would be inclined to grant Mr. Lopez's motion to exclude such evidence.

motion at trial when the Court may evaluate the admissibility of this prior act evidence in context. *See In re MTBE*, 643 F. Supp. 2d at 476 ("[C]ourts considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (internal citation omitted)).

Accordingly, the Court will deny Mr. Lopez's motion *in limine* to exclude evidence of prior acts, ECF No. 66, without prejudice to renewal at trial.

### 2.    Evidence of Convictions

Mr. Lopez is charged in Count Ten of the Second Superseding Indictment with unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(l) and 924(a)(2). The Government has indicated that "[u]nless a stipulation is reached, [it] plans to introduce during its case in chief evidence of the defendant's prior convictions to prove an essential element of" the Section 922(g)(1) Count. Joint Trial Memo at 10.

Because Mr. Lopez's criminal conviction is necessary to prove the Section 922(g)(1) Count, the Court must admit this evidence. *See United States v. Gilliam*, 994 F.2d 97, 100 (2d Cir. 1993) ("The fact that Gilliam was convicted of a felony is an intrinsic issue in a § 922(g)(1) trial, and proof of a prior conviction is necessary for the offense to be substantiated."); *see also United States v. Chevere*, 368 F.3d 120, 122 (2d Cir. 2004) ("[I]n a prosecution under § 922(g)(1), there are no circumstances in which a district court may remove the element of a prior felony conviction entirely from the jury's consideration by accepting a defendant's stipulation to that element."). "The *underlying facts* of the prior conviction, however, are completely irrelevant to § 922(g)(1). The jury has no need to know the nature of the prior conviction; all that it needs to know is that there was a prior conviction sufficient to sustain that element of the crime." *Gilliam*, 994 F.2d at 103 (emphasis in original); *see also Old Chief v. United States*, 519 U.S.

172, 190 (1997) ("Congress, . . . has made it plain that distinctions among generic felonies do not count for [the] purpose [of Section 922(g)(1)]; the fact of the qualifying conviction is alone what matters under the statute."); *United States v. Cruz*, 343 F. Supp. 2d 226, 232, 232 n.6 (S.D.N.Y. 2004) (precluding "substantive evidence of the facts underlying [defendant]'s prior convictions" but noting "[c]learly, the Government must be allowed to admit the fact of [his] felony convictions to make out the elements of the felon-in-possession statute, for example, through the admission of a certified copy of a judgment of conviction").

As a result, to the extent the parties do not reach a stipulation, the Government may introduce evidence of Mr. Lopez's prior convictions, although it may not introduce the underlying facts of such conviction. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.").

Accordingly, to the extent Mr. Lopez seeks to exclude any evidence of his prior convictions, his motion *in limine*, ECF No. 66, will be denied.

### D.  The Motion to Compel Physical Examination and Photographing

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment privilege "must be broadly construed to serve the right it was designed to protect," *Estate of Fisher v. C.I.R.*, 905 F.2d 645, 648 (2d Cir. 1990), and the Court should not infer a waiver of this constitutional right lightly, *Emspak v. United States*, 349 U.S. 190, 196 (1955). "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 189 (2004).

"[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201,

210 (1988). "The act of exhibiting [certain] physical characteristics is not the same as a sworn communication by a witness that relates either express or implied assertions of fact or belief." *United States v. Hubbell*, 530 U.S. 27, 35 (2000). "Because the exhibition of physical traits is not a 'communication by a witness that relates either express or implied assertions of fact or belief,' it does not enjoy constitutional protection. For that reason, the Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant." *Greer*, 631 F.3d at 612 (quoting *Hubbell*, 530 U.S. at 35). Where, however, the Government seeks to introduce a "tattoo not as an 'identifying physical characteristic' but for the 'content of what [was] written,'" the tattoo may be testimonial. *Id.* (quoting *Gilbert v. California*, 388 U.S. 263, 266–67 (1967)).

The Government requests "an order allowing FBI investigators to obtain photographs of the defendant's physical characteristics, specifically his wrists, forearms, chest, and stomach." Mot. re Photographing at 3. The Government claims that "[p]hotographs of Lopez will provide relevant evidence as to the identity of the person who committed gunpoint robberies in the District of Connecticut in March 2020." *Id.* at 1. The Government contends that video surveillance of the robberies depict a visible tattoo "on the right wrist and forearm of the male who robbed a gas station" on March 22, 2020, and, "the individual who robbed [a] gas station [on March 26, 2020] lifted up his shirt revealing his stomach and lower chest (and an absence of any tattoos thereon)." *Id.* The Government argues that his tattoos are physical characteristics that "fall outside the protection of the Fifth Amendment." *Id.* at 2 (citing *Gilbert*, 388 U.S. at 267).

In response, Mr. Lopez does not object to photographs of his wrists, forearms, and stomach area but objects to photographs of his chest or lower chest area. Resp. to Mot. re Photographing at 5. Mr. Lopez argues that in video surveillance from the March 26, 2020 robbery "the suspect does in fact lift a portion of his clothing which reveals a portion of his

stomach up to approximately his lower rib cage and/or sternum. However, at no point does the suspect lift his clothing high enough to show or display his lower chest or chest area." *Id.* at 4. Mr. Lopez further argues that because his "chest area is not 'openly visible,' the request to photograph this area would be the same as 'compelling' Mr. Rosario Lopez to bear evidence against himself which implicates his Fifth Amendment privileges." *Id.* at 5.

The Court agrees, at least in part.

Because the Government seeks to obtain photographs of Mr. Lopez's tattoos (or lack thereof) for identification purposes, Mr. Lopez's Fifth Amendment rights are not infringed by permitting photographing of his tattoos for this purpose. *See Greer*, 631 F.3d at 612 ("[T]he Fifth Amendment is not offended where a witness relies on a tattoo to identify a defendant. In that context the tattoo is a physical feature, no different from a handwriting or blood sample, or a scar." (citation omitted)). Because Mr. Lopez represents, and the Government does not dispute, that the individual in the surveillance footage does not reveal their chest area, photographs of Mr. Lopez's chest area is not relevant to any identification purpose.

Accordingly, the Government's motion to photograph Mr. Lopez, ECF No. 136, is granted in part to allow the Government to photograph Mr. Lopez's wrists, forearms, and stomach area, but denied in part to the extent the Government seeks to photograph his chest area.

### E.  The Motion to Sever the Section 922(g)(1) Count

The Second Circuit has "rejected the notion that the fact of a prior felony conviction is so prejudicial that it necessarily precludes a fair trial," and "where the prior felony conviction is an element of the charged crime, the district court cannot withhold the fact of a prior conviction from the jury." *Page*, 657 F.3d at 129–30 (citations omitted). "It is true, though, that the fact of a prior conviction may have an additional and adverse effect on the § 922(g)(1) defendant, if the

jury is unduly influenced by the prior conviction." *Gilliam*, 994 F.2d at 100. As a result, "[c]ourts have held that joinder of an ex-felon count with other charges requires either severance, bifurcation, or some other effective ameliorative procedure." *United States v. Jones*, 16 F.3d 487, 492 (2d Cir. 1994) (citations omitted). "[W]here, . . ., there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial." *Page*, 657 F.3d at 132; *see also Gilliam*, 994 F.2d at 100. ("[W]here the district court issues a proper curative instruction, we must presume that a conscientious jury will only use the proof of the prior conviction to satisfy the element of the crime.").

Mr. Lopez argues that "the felon in possession charge is a stand-alone charge and is not connected to the other [] counts[,]" and his "prior felony conviction will invade the jury's mind when assessing guilt or innocence" and "he will suffer 'substantial prejudice' without severance." Mot. to Sever at 6–7. In the alternative, he requests that the Court bifurcate the Section 922(g)(1) Count from the other counts in the indictment because "[a] limiting instruction is simply insufficient and 'cannot adequately protect' Mr. Rosario Lopez' constitutionally guaranteed trial rights." *Id.* at 7.

In response, the Government asserts that it "recovered the pistol in his Honda Accord upon his arrest for [the remaining counts]," and that "[t]he pistol, the subject of [the Section 922(g)(1) Count], is believed to have been used in [the remaining counts], along with his car." Opp'n re Sever at 5. The Government thus argues that "[t]he firearm, supporting [the Section

922(g)(1) Count], is intrinsically linked to the robbery counts as an instrumentality of those crimes." *Id.* at 7. The Government further argues that "[t]he Court can take adequate precautions to minimize any prejudice[,]" such as through a limiting instruction. *See id.* at 8 (citing *Page*, 657 F.3d at 132). The Government also indicates that it "is not opposed to simply bifurcating" the Section 922(g)(1) Count. *Id.* at 8–9.

The Court agrees.

While Mr. Lopez relies in part on the Second Circuit's decision in *United States v. Jones*, 16 F.3d 487 (2d Cir. 1994), "[t]he unique circumstances present in *Jones* do not exist here." *Page*, 657 F.3d at 132; *see also id.* ("We reject Page's contention that a felon-in-possession charge must always be severed from other charges. *Jones* does not stand for that proposition."). Here, the Section 922(g)(1) Count is properly joined with the remaining offenses, because the firearm forming the basis of the Section 922(g)(1) Count was allegedly used during most of the robberies charged in the Second Superseding Indictment, and thus the Counts are "based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). In addition, separate trials on the Section 922(g)(1) Count and the remaining counts would "require[] much of the same evidence." *Page*, 657 F.3d at 130. Unlike the evidence in *United States v. Narzikulov*, No. 19-CR-223, 2019 WL 6699801 (E.D.N.Y. Dec. 9, 2019), here there is a "logical connection" between the Section 922(g)(1) Count and the remaining counts in the Indictment, which primarily relate to armed robberies. *See Narzikulov*, No. 19-CR-223, 2019 WL 6699801 at *3 ("The critical feature distinguishing Paige from the instant case is the 'logical connection' between the felon-in-possession count and the other charges in the indictment.").

As a result, Mr. Lopez fails to meet his "heavy burden" in showing that severance is necessary to mitigate the risk of unfair prejudice. *See Page*, 657 F.3d at 131; *see also id.* at 132 ("[W]here, . . ., there is a logical connection between the felon-in-possession count and the other charges, there is a similarity in the evidence necessary to prove the different charges, the trial court takes steps to limit the danger of prejudice and gives a proper limiting instruction, and the defendant is not substantially or unfairly prejudiced, a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial.").

The Court will, however, bifurcate the Section 922(g)(1) Count from the remaining counts to mitigate the risk of unfair prejudice. *See Page*, 657 F.3d at 132 ("Nothing in this opinion should be taken to be a denunciation of the practice of bifurcating a felon-in-possession charge from other charges in a single multi-charge trial where doing so would better protect the defendant from prejudice than a limiting instruction, and the district court determines that a limiting instruction cannot adequately protect the defendant from substantial prejudice and bifurcating the trial of that charge would provide such protection."); *United States v. Amante*, 418 F.3d 220, 224 n.1 (2d Cir. 2005) ("[I]n a multi-count trial, a decision to bifurcate a felon-in-possession charge in its entirety from other charges (or severance or 'some other effective ameliorative procedure') may be appropriate in certain circumstances."); *United States v. Robinson*, No. 16-CR-545-ADS-AYS-1, 2017 WL 5135598, at *6 (E.D.N.Y. Nov. 1, 2017) ("[T]here is some risk that the Defendant will be prejudiced by the joinder of the charges. However, as the case law makes clear, that does not mean that severance is required. Instead, the Court finds that bifurcation of the charges, to which the Government has consented, would sufficiently remove any prejudice.").

Accordingly, Mr. Lopez's motion to sever, or, in the alternative, to bifurcate the Section 922(g)(1) Count, ECF No. 63, will be granted in part and denied in part. The request to sever the Section 922(g)(1) Count will be denied, but the Court will bifurcate the Count from Counts One to Nine of the Second Superseding Indictment.

## IV.    CONCLUSION

For the following reasons, Mr. Lopez's motion to suppress, ECF No. 58, is **DENIED** without prejudice to renewal at trial.

Mr. Lopez's motion to inspect grand jury minutes and transcriptions, ECF No. 125, is **DENIED**.

Mr. Lopez's motion *in limine* to exclude "bad act" evidence, ECF No. 66, is **DENIED** without prejudice to renewal at trial.

The Government's motion for physical examination and photographing, ECF No. 136, is **GRANTED** in part and **DENIED** in part. The Government may photograph Mr. Lopez's wrists, forearms, and stomach area, but it may not compel Mr. Lopez to provide photographs of his chest area.

Mr. Lopez's motion to sever or bifurcate the Section 922(g) charge, ECF No. 63, is **GRANTED** in part and **DENIED** in part. The request to sever the 922(g)(1) Count is denied, but the Court will bifurcate the Count from Counts One to Nine of the Second Superseding Indictment.

**SO ORDERED** at New Haven, Connecticut, this 11th day of April, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE